Wickham, J.
This cause is submitted to the court on the pleadings and the evidence. The facts, about which there is little or no controversy, are as follows:
Some years prior to July, 3907, the defendants, George Sander-son and Margaret Hays Sanderson, were married in Mt. Vernon, this county. One child was born to them and it has been in the custocly of and supported by the mother since its birth. Soon after their marriage, George Sanderson abandoned his wife and went to the state of California, where he has since resided; his wife with their child during his absence has continued to reside in the city of Mt. Vernon.
In 1903, William Sánderson, Jr., the father of George Sander-son, died intestate, seized of certain real estate situated in the city of Mt. Vernon, of which the defendant, George Sanderson, as one of his heirs at law, inherited the one-sixth.
In July, 1907, the defendant, George Sanderson, returned to Mt. Vernon to visit his brothers and sisters and his mother, who was then in failing health. On the 9th day of July, 1907, Margaret Hays Sanderson brought suit in this court against her husband for alimony; personal service having been obtained on the defendant, an application was made to the court for an allowance of temporary alimony. An allowance was made on July 15, 1907, in the sum of $50, payable August 15, 1907, and $20 a month thereafter during the pendency of the suit, payable on the 15th of each month.
George Sanderson made no defense to his wife’s suit for alimony, and some time in the latter part of July returned to California. Neither while he ivas in Mt. Vernon nor at any other time was any part of the temporary alimony paid by the defendant.
On October 5, 1907, .George Sanderson executed a quit-claim de.ed conveying all of his undivided one-sixth interest in the real estate of which his father had died seized to his mother, Sarah Sanderson. This deed was sent by mail from his residence in *73 California to his mother in Mt. Vernon, and was received by her and filed for record; the consideration expressed in the deed was' $300, but no consideration passed at the time of his visit to Sit. Vernon, nor after he returned to California.
On October 16, 1907, Sarah Sanderson executed her last will, by which she devised the undivided one-sixth of the real estate, conveyed to her by her son George, to her.son the defendant, William L. Sanderson, and expressly provided in her will that her son George was to receive nothing from her estate.
On October 25, 1907, Sarah Sanderson died and her will was admitted to probate.
On October 29, 1907, this action was brought by the plaintiff, Katherine Reeves, one of the tenants in common of the real estate held in common by -the heirs of William Sanderson, Jr., deceased, making her brothers and sisters defendants, and also Margaret Hays Sanderson, the wife of George Sanderson, it being conceded that she has an inchoate right of dower-in the one-sixth .conveyed by George Sanderson to Sarah Sanderson, and devised by her to William L. Sanderson.
In this action Margaret Hays Sanderson has filed an answer and cross-petition against William L. Sanderson, in which she claims a lien on the one-sixth owned by her husband for the amount of the temporary alimony, allowed to her in her suit for alimony, and also claims that the conveyance by her husband to his mother, and the devise by her to William L. was, in law and in fact a fraud on her rights, and that the purpose of the conveyance and devise was to defeat her from recovering alimony in her suit then pending.
Before the petition for partition was filed the term of court ended and the succeeding term commenced in November, 1907, and on December 12, 1907, the alimony suit was tried and the court found for the plaintiff, and decreed to -her permanent alimony in the sum of $2,000 of which $1,000 was to be paid December 14, 1907, and $100 every three months thereafter until the balance was paid.
At the November term .of court the partition suit progressed and the property was sold; a partial distribution was made; the value of her inchoate right of dower was paid to Margaret Hays *74 Sanderson, and Ey agreement one-sixth, of the balance of the fund, after payment of costs, was retained bjr the sheriff to await the adjudication of the issues between the defendants, William L. Sanderson and Margaret Iiays Sanderson, who are the only persons interested in the decision of the question now presented to the court; and in the further consideration of the ease I will designate Margaret Iiays Sanderson as the plaintiff and William L. Sanderson as the defendant.
As we view the case, three questions are presented to the- court for determination—two of law and one of fact.
The questions of law are:
First. Did the decree for temporary alimony become a lien on the real estate owned-by the plaintiff’s husband?
Second. Was the plaintiff a creditor of her husband in the sense that a conveyance of his real estate without consideration to his mother, with the understanding and purpose of keeping it in the family for the benefit of the grantor, or for the purpose •of defeating the plaintiff in subjecting it to the payment of any decree for alimony she might recover in the suit then pending, would be a fraud upon her and render the conveyance void?
Third. The question of fact: Was the conveyance made without consideration, and for the purpose of saving it from any decree for alimony the plaintiff might obtain?
Taking these questions up in their reverse order, what are the facts? The conveyance was made without consideration moving to the grantor from the grantee at or near the- time it was made. It appears that about four years before Mrs. Sander-son let her son George have two hundred dollars, and she probably gave- him other small sums at times before and since. But were they loans? She took no notes or written acknowledgments of indebtedness. It does not appear from any evidence that she ever claimed that George was indebted to her on account of money loaned.
It is fairly presumable that she did not ask him to pay her by conveying his interest in the real estate at the time he visited her in July, 1907. If she had requested it, or it occurred to-him to do so, no reason is apparent why it was- not done before he returned to California. The deed was executed two months after *75 lie returned, and was sent to the grantee by niail. The grantor had knowledge of the suit then pending against him for alimony. His mother had knowledge of it, she had read about it in the daily papers as- one of the witnesses so testifies. They knew temporary alimony had been allowed—must have known it if they read the city papers, and that Mrs. Sanderson read the papers appears from the evidence.
In view of these facts we feel safe in our conclusion that Mrs. Sanderson did not consider her son George her debtor, but the sums of money he received from her were gifts, such as a mother would make to her son for whom she had all of a mother’s affection.
The conveyance was made, therefore, without consideration, and was made by George Sanderson to defeat his wife from obtaining it or its proceeds as alimony. This conclusion ■ is irresistable in view of the relationship, financial and filial, existing between him and his mother for years before. If he had been moved by a sense of justice, or a desire to pay his mother a debt he owed her, it would seem that he would have done it years before, or at the very latest while he was in Mt. Vernon and could deliver the deed in person.
Our opinion is that it did not occur to him to make the conveyance until after he had returned to California, and that at his request Mrs. Sanderson accepted the deed and made her will devising the property to her son William. What share he had in the transaction, or whether he had any, does not concern us.
Under this state of facts, what are the rights of the plaintiff ? '
Courts do not decree alimony as a debt due the wife, or as damages to be paid to her by her husband. It is not a debt in the sense of a contracted obligation, but is property to which she is entitled from her husband’s estate, because of the obligation of the husband to support her, arising from the marriage relation. He not only owes to her the duty of support, but he owes to organized society the duty of supporting his family, and if he fails to perform his duty the public has the right to be protected from the consequence. State, etc., v. Cook, 66 O. S., 566.
The authority for the decree for alimony is found in Revised Statutes, Section 5703.
*76 George Sanderson had failed.in his duty to,support his wife and child. He knew that bjr reason of such failure his wife had an equitable claim on his estate. Sarah Sanderson knew the same, for such is the law, and every person is presumed to know the law. They knew that the plaintiff’s claim was in process of litigation, and anticipated a result favorable to the plaintiff. To defeat the plaintiff from securing the fruits of her judgment to be obtained, the deed and devise were made. Thus the plaintiff’s husband attempted to perpetrate a constructive fraud upon the plaintiff, the public and the law.
The conveyance was made after the decree for temporary alimony was granted by the court. I find no authority on the question whether a decree for temporary alimony is a lien on the real estate of the alleged delinquent husband, unless Conrad v. Everich, 50 O. S., 476, be .such authority. After its allowance by the court, it is money due from the estate of the husband for the wife’s sustenance for the time being. It is a solemn adjudication of the court, authorized by statute, predicated on the paramount obligation of the husband to support his wife. It is a judicial debt of record against the husband; and every consideration requires that it should carry with' it the incident of a judgment at law, that from the time of its rendition it attaches as a lien to the real estate of. the debtor in the county where the judgment is rendered.
Our judgment is 'in favor of the plaintiff; and it is ordered.
First.. That out of the fund now in the hands of the sheriff the costs of this proceeding be first paid.
Second. That the amount, of the temporary alimony accrued at the date of the final judgment in the alimony case, $110 with interest to this date, be next paid; and
Third. That the balance in the hands of the sheriff be applied on the $1,000 permanent alimony, which was due December 14, 1907. ■
Motion for a new trial ovei’ruled and exceptions noted.
Appeal bond in sum of $1,500.